Argued at Pendleton May 4, affirmed June 23, 1925.

# J. F. PHY ET AL. *v.* M. B. ALLEN.

(236 Pac. 1056.)

**Judges—Defendant's Motion for Change of Judge and Affidavit of Prejudice made After Rulings by Court not Timely.**

1. Where defendant waited until court had ruled on his demurrer to complaint and had passed on motion to strike portion of answer, motion for change of judge and affidavit of prejudice filed by him thereafter was not timely, in view of Sections 45—1, 45—2, Or. L., and especially of Section 45—3; there being in the county no presiding judge to hear motions and demurrers at any time.

**Appeal and Error—Testimony Below Assumed Sufficient to Support Pleadings When not Before Court on Bill of Exceptions.**

2. The testimony in court below is assumed sufficient to support the pleadings when not before court on bill of exceptions.

**Brokers—Broker, Having Procured Willing Buyer, Entitled to Commissions, Though Sale not Consummated.**

3. Where a broker, employed as such, not only procured buyer for a drug-store ready, willing and able to purchase the property, but also procured from such purchaser an acceptance in writing of the defendant's offer, he was entitled to recover a commission, though the sale was not consummated.

See (1) 33 **C. J.** 1013.   (2) 4 **C. J.** 735.   (3) 9 **C. J.** 623, 624.

From Union:   J. W. KNOWLES, Judge.

In Banc.

This is an action for the collection of a broker's commission. The cause was tried before the court and a jury, and a verdict rendered in favor of plaintiffs by direction of the court. From a resulting judgment defendant appeals.

The complaint, which was challenged by a demurrer, alleges in substance that the plaintiffs were duly

1.  See 15 **R. C. L.** 541.
2.  See 2 **R. C. L.** 159.
3.  When broker has earned commissions, see note in 139 **Am. St. Rep.** 225.
   Right of real estate broker to commissions on refusal of principal to carry out contract with purchaser, see note in 43 **L. R. A.** 593. See, also, 4 **R. C. L.** 310.

licensed real estate brokers; that on December 19, 1923, the defendant entered into a written agreement with plaintiffs appointing them as agents for the purpose of selling a drug-store and fixtures of defendant at Elgin, Oregon. The agreement, a copy of which is attached to the complaint, in addition to the formal parts, contains the following:

"Now, therefore, in consideration of the premises, the party of the first part does hereby engage the party of the second part to bring to him or her a purchaser or trader for said property; such purchaser or one who will trade for the same to be brought to owner on or before the first day of August, 1924; and in the event that the party of the second part shall bring to the party of the first part on or before the date last above written any person or corporation or any one who shall as the result of the efforts of the party of the second part, then or thereafter purchase or trade for said property of the party of the first part. The party of the first part does hereby covenant and agree to pay the party of the second part for such services the sum of five per cent of the amount of the purchase or trade price paid or to be paid to the party of the first party for said property."

The complaint then alleges that, acting under the authority to sell, as set forth in the agreement, the plaintiffs herein obtained a sale for the said stock and fixtures as per the offer of defendant, as set forth and signed by him under the date of June 28, 1924, a copy of which is attached to the complaint; that the said Charles S. DeForest, named in the said offer, accepted the same as shown by the acceptance indorsed thereon, and also made due and diligent effort to complete said contract and was ready at the said time and has been ready, willing and able to complete the said contract, as set forth in the offer of the defendant; that the defendant refused to com-

plete the contract. Wherefore, plaintiffs demand commission of 5 per cent upon the $18,200, the trade value of the property.

The offer and acceptance, made a part of the complaint, is as follows:

"June 28, 1924.

"Offer from M. G. Allen to Chas. DeForest in Regard to Drug Store.

"M. G. Allen agrees to take DeForest House at $10,000 and assume $3,600.00 mortgage and also take seven lots at $2,800.00.

"DeForest to assume $9,000.00 accounts and notes invoice Drug Store at what it cost to lay it in Elgin wholesale price.

"To allow $4,500.00 for all fixtures in the store. If stock and fixtures does not amount to approximately $18,200, Allen to make up that amount to DeForest and if more than that DeForest to pay difference.

"(Sgnd.)   M. G. ALLEN.

"La Grande, Oregon, July 7th, 1924.

"The above offer is hereby accepted.

"(Sgnd.)   CHAS. S. DEFOREST."

The defendant filed a general demurrer to the complaint which was overruled by the court. On motion of plaintiffs a portion of the answer was stricken out, whereupon the defendant filed an amended answer denying the allegations of the complaint, and further alleging that the acceptance of the offer by Chas. S. DeForest was fictitious and not made in good faith. A reply was filed putting in issue the new matter of the answer.

Thereupon, as stated in defendant's abstract of record, the defendant filed an affidavit of prejudice against the judge who rendered the decision upon the demurrer and motion to strike out a portion of the answer, and moved that the cause be heard before

another judge. This motion was overruled and the cause was tried before a jury. The defendant did not appear or produce any testimony upon the trial. The court directed a verdict in favor of the plaintiffs which was rendered. There is no bill of exceptions filed in this case; therefore, we have not the testimony before us.                                    AFFIRMED.

For appellant there was a brief and oral argument by *Mr. L. Denham.*

For respondent there was a brief and oral argument by *Mr. H. E. Dixon* and *Mr. Carl G. Helm.*

BEAN, J.—The defendant assigns error of the trial court in denying his application for a change of judges. The affidavit of prejudice is not brought into the record by a bill of exceptions in conformity to the requirement of the opinion in *Shaughnessy* v. *Kimble,* 106 Or. 484, 487 (212 Pac. 483, 213 Pac. 135). The affidavit is not authenticated in any manner by the trial judge, or otherwise, except by being contained in the abstract of record.

Passing this question, the affidavit of prejudice was filed, or was claimed to be filed, by the defendant after the trial judge had ruled upon the demurrer and also upon the motion to strike a portion of the answer of defendant.

Section 54—1, Or. L., provides the procedure when it is established that the trial judge is prejudiced against any party, or attorney, appearing in such cause. Section 45—2, Or. L., provides that a party may establish such prejudice by motion supported by affidavit that the judge before whom the action or suit is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or

believes that he cannot, have a fair and impartial trial before such judge. Section 45—3, Or. L., provides as follows:

"*Motion to be Made at any Time in Counties Where There is a Presiding Judge.* In any county of the state of Oregon where there is a presiding judge who hears motions and demurrers and assigns cases to the other departments of the circuit court for trial, the affidavit and motion for change of judges to hear the motions and demurrers or to try the case may be made at any time, either before or after the assignment of the case for trial, and either before a hearing upon a motion or demurrer or the commencement of trial of the cause; provided, further, that no party or attorney shall be permitted to make more than two applications in any action or proceeding under this act."

The plain provisions of the latter section of our statute indicates that in counties of this state where there is only one circuit judge, it was not contemplated by the legislature that an affidavit of prejudice could be filed after the hearing upon a motion or demurrer, or the commencement of the trial. *Expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another, is an old maxim; therefore, the provisions in regard to any county where there is a presiding judge who hears motions and demurrers and assigns cases to other departments of the Circuit Court for trial, permitting the affidavit and motion for a change of judges to be made at any time, either before or after the hearing upon a motion or demurrer, or the commencement of the trial, precludes the filing of such affidavit and motion in other counties where there is only one judge, after the court has ruled upon the demurrer or motion. Such has also been the ruling in this state, following the

rulings by the Supreme Court of the State of Washington, from which state we borrowed our statute in regard to the affidavit of prejudice: See *State* v. *Stilwell,* 100 Or. 637 (198 Pac. 559).

In the Circuit Courts in counties like Union County, where there is no presiding judge who hears motions and demurrers and assigns cases to other departments of the Circuit Court for trial, a party is not allowed to speculate upon what rulings the court will make on questions involved in the case and then, if the rulings do not happen to be in his favor, for the first time to raise the question of jurisdiction. The affidavit and motion must be filed and called to the attention of the court before it has made any ruling whatsoever in the case: *Harju* v. *Anderson,* 111 Or. 414 (225 Pac. 1100); *State ex rel.* v. *Circuit Court of State of Oregon for Deschutes County,* 114 Or. 6 (233 Pac. 863, 234 Pac. 262); *State ex rel.* v. *Superior Court,* 114 Wash. 335 (195 Pac. 25).

1. In the present case the defendant waited until the court had ruled upon his demurrer to the complaint and also passed upon the motion to strike a portion of the defendant's answer. The motion and affidavit of prejudice was not timely made. There was no error in denying the motion.

2, 3. The defendant predicates error upon the overruling of defendant's demurrer and contends that the judgment is not supported by the pleadings. It will be seen from the complaint that it was alleged that the plaintiffs, pursuant to the contract with the defendant referred to above, obtained a sale for this property of defendant and produced a purchaser therefor who was ready, willing and able to complete the contract as set forth in the offer of defendant and endeavored to complete the contract. As the deal

was for an exchange of properties or trade, it became necessary for the defendant to consent to the terms of such trade. This was done by the offer made in writing by the defendant, Allen, to Charles DeForest, which was accepted in writing by the latter, as shown by the offer and acceptance, which was made a part of the complaint, as set forth above. The complaint alleges that the plaintiffs fully complied with their terms of the contract and as far as they were concerned, made a sale of the property. They produced a purchaser, who was ready, able and willing to make the trade and also obtained a written acceptance of the offer of defendant to sell or exchange the property. They were, therefore, entitled to submit proof to the court showing that the defendant was liable to them for their commission. The testimony is not before this court and it must be assumed that the same was sufficient to support the pleadings.

It has often been held by this court that a broker, being employed as such, has earned his commission when he has produced a purchaser ready, able and willing to buy on the owner's terms. If he does and places the owner in a position to deal with the person he has induced to become the buyer, his contract is performed: *Grindstaff* v. *Merchants Inv. Co.*, 61 Or. 310, 312 (122 Pac. 46); *Taylor* v. *Peterson*, 76 Or. 77 (147 Pac. 520); *Henry* v. *Harker*, 61 Or. 276, 291 (118 Pac. 205, 122 Pac. 298). In the latter case, at page 291 of the Report, Mr. Justice BURNETT said:

"It may be premised that the employment of a real estate broker is not strictly a contract for the sale of property but for services. Ordinarily his contract is performed when he has produced a purchaser able, ready, and willing to purchase at the terms

offered. If he does this, and places the seller in a position to deal with the person whom he has induced to become a prospective buyer his labor is ended and his fee earned.''

It is the general rule that where a broker finds a customer ready, able and willing to enter into a transaction on the terms proposed by the principal, he cannot, unless there was a special contract to the contrary, be deprived of his right to his commissions by reason of the transaction failing on account of the refusal of the principal to complete the transaction without good grounds for such refusal, and without fault upon the part of the broker: 9 C. J. 623, §§ 102–105.

In 9 C. J. 625, note 68, (a) we find, in effect, that where it appears the real estate broker has found a purchaser who is ready, able and willing to buy the property and actually introduces such proposed purchaser to the owner of the property, with a view to closing the deal, and the owner refuses to proceed and consummate it in accordance with the terms agreed upon, the law regards the sale as made on the part of the broker. In such circumstances the broker has fully performed the full undertaking of his contract and is entitled to recover his commissions identically as though the deed were actually delivered. Citing *Holden* v. *Lyon,* 175 Mo. App. 165, 169 (157 S. W. 811). Id. (b). Neither the broker nor the purchaser is required, in such a case, to tender the purchase money, before the broker may legally bring suit for his services: *Vaughan* v. *McCarthy,* 59 Minn. 199 (60 N. W. 1075). An actual tender of the purchase price is generally not necessary in order for the broker to recover his commissions, where he has found a purchaser ready, able and willing to buy, and who offers to buy on the terms

stipulated by the owner but the owner refuses to carry out the trade: *Smith* v. *Tatum*, 140 Ga. 719 (79 S. E. 775). (c) Under the same conditions where a broker procures an offer which the owner at 'first accepts, but later rejects, the broker is entitled to his commission and it is not necessary that the property should be actually conveyed or that the refusal to convey should be dishonest, arbitrary or capricious: *Home Banking etc. Co.* v. *Baum*, 85 Conn. 383, 82 Atl. 970.

In 9 C. J. 608, Section 93d, it is stated:

"To entitle him to a commission where no sale is actually consummated, a broker employed to find a purchaser ·must either produce to the owner a customer who is able, ready, and willing to buy on the terms prescribed by the owner, or else take from the customer a binding contract of purchase, unless these requirements are waived by the principal's refusing to proceed after notice by the broker that he has such a contract or purchaser. If a broker employed to find a purchaser brings to the owner a person who is able, ready and willing to purchase on the owner's terms, he is entitled to compensation, although he does not make or negotiate a binding contract with the purchaser."

In the present case, as shown by the complaint, the brokers did more than find a purchaser who was ready, able and willing to purchase the property. They procured an acceptance in writing by such purchaser of the offer in writing made by the defendant. The complaint alleges sufficient facts to constitute a cause of action and to support the verdict and judgment. There was no error in overruling the demurrer.

Finding no error in the record, the judgment of the trial court is affirmed.　　　　Affirmed.